GILMORE v. JOERS.

5-2479                                          350 S. W. 2d 520

Opinion delivered October 30, 1961.

*Curtis L. Ridgway, Jr.,* for appellant.

*Wood, Chesnutt & Smith, Wootton, Land & Matthews* and *Elbert Cooke,* for appellee.

PAUL WARD, Associate Justice. Before reaching the merits of this case we first dispose of appellees' motion to dismiss the appeal for failure of appellant to comply with Rule 9 (d) of this Court. This rule requires appellant to present an abstract or abridgment of the material parts of the pleadings, proceedings, etc. "as are necessary to an understanding of all questions presented to the court for decision". Regardless of the merit of such a motion at the time it is filed, we do not dismiss an appeal on this kind of motion. However, as provided in Rule 9 (e), appellee is given the option to stand on his motion or submit a supplemental abstract. In the first event, if the motion has merit, we will affirm on final submission. Here, appellees have chosen to furnish a supplemental abstract, so we now proceed to a consideration of the case on its merits.

In order to clarify the issues presented we set out below uncontroverted facts as we have gleaned them from the record. Prior to the death of Mose Klyman in 1956 he owned a parcel of land (described by metes and bounds), consisting of about 20 acres, near Hot Springs and abutting Highway No. 70 on the northwest side of the highway. Approximately two years before his death he deeded a portion of the above mentioned land (about 5 acres) to appellees. Appellees purported to build nice residences on this land, and it is their contention (not disputed) that they had an understanding with Klyman at the time of the purchase that Klyman would restrict the rest of his lands (containing 14.2 acres) to residential purposes. Some two years after Klyman's death appellees filed suit in chancery court (Case No. 31617) against the executor and heirs of Klyman to reform his deed so as to include the above mentioned restriction, and to have such restrictions impressed on the said 14.2 acres by the court. While this suit was pending and on April 30, 1958 Betty Leonard Reinagle, one of the heirs

of Klyman, bought the interests of all the other heirs in and to the said 14.2 acres. On May 24, 1958 Betty Reinagle sold and conveyed the land to Rosa Lee Gilmore, appellant herein. The deed of conveyance to appellant contained a provision that the north 8 1/4 acres were to be restricted to residential purposes, and also that the rest of the land (the south 5.8 acres) were likewise to be restricted, except that appellant could erect and maintain a nursing home thereon limited to twelve patients. These restrictions were made binding on appellant, her heirs, executors, administrators or assigns. On this same day (May 24, 1958) a stipulation was entered into by the attorneys (in the suit above mentioned) agreeing (among other things) to a consent decree (in said Case No. 31617) restricting the use of the 8 1/4 acres and the 5.8 acres as above set out. Also, on the next day, appellant and Betty Reinagle signed a written agreement wherein appellant consented to the entry of a decree imposing the restrictions previously mentioned.

Following the above, the Chancery Court, on May 27, 1958, entered a decree imposing the restrictions on the lands in the manner heretofore mentioned, and no appeal was taken therefrom.

It is not disputed that appellant had for many months violated the terms of the agreement and the decree of the court by maintaining on the south 5.8 acres a rest home for more than twelve people, when, on November 29, 1960, appellees filed a petition in said Case No. 31617 asking that appellant be held in contempt of court for said violation.

On December 16, 1960 appellant filed a response to the citation combined with a motion to dissolve the injunction issued on May 27, 1958. In this pleading appellant asked to have the citation dismissed for two reasons, to-wit: (a) she was not a formal party to the injunctive action, and had no knowledge thereof, and: (b) appellees had acquiesced in her violation. After a hearing the trial court found that appellant had actual

knowledge of the restrictive covenants heretofore mentioned, and that she admits to violating them. The court then ordered appellant to reduce the patients to twelve within sixty days and not to exceed that number in the future. Appellant prosecutes this appeal for a reversal on three grounds.

First, we see no merit in appellant's contention that she had no notice of the existence of the injunction relative to the occupancy restrictions. She signed the agreement mentioned heretofore which makes reference to the pending suit. This agreement states that the parties "may cause a decree to be entered in said cause restricting" the nursing home to twelve patients. Also her deed shows very clearly she knew of the restrictions.

Appellant's second point for reversal is essentially the same as the first point and therefore need not be discussed. Appellant, in her reply brief, cites *Mullane* v. *Central Hanover Bank & Trust Co.* 339 U. S. 306, 70 Sup. Ct. 652, 94 L. Ed. 865, for authority that an injunction cannot be maintained against a person on constructive notice. We have read the cited case and find it does not apply to facts in the case before us. Moreover, the Chancellor found, and we also find from the record, that appellant had actual notice.

Finally, appellant contends that "The injunction should be dismissed because of the appellees' laches". In support it is stated that appellant began the nursing home in May, 1958, that her operation has been open and notorious, and that appellees must have known that she had more than twelve patients because they lived near by and regularly passed in front of her premises. These facts, says appellant, constitute laches on the part of appellees which operates to her financial loss. We need not examine authorities cited by both sides because we find that the evidence fails to show any undue delay on the part of appellees in attempting to assert their rights. Although appellant says she has operated the home for approximately two years, yet she nowhere

points out, in her brief, the date she acquired more than twelve patients. On the other hand one of the appellees testified that he first learned (from one of the patients) of the excessive number sometime in the spring of 1960 before his petition was filed in November of that year. Under this state of the record we hold that appellant has failed to discharge the burden to show facts constituting laches on the part of appellees. Conceding (without so holding) that appellant's motion amounts to a plea of laches, still it was an affirmative plea and the burden of proof was on her. See: *White* v. *Williams*, 192 Ark. 41, 89 S. W. 2d 927. There is an exhaustive treatment of laches in relation to the enforcement of restrictive building covenants in 12 A. L. R. 2d at pp. 397 and 398. Among other things it is there stated:

"The nature of the relief allotted to one who seeks to enforce a restrictive building covenant lies in the discretion of the court: an injunction may be granted requiring defendant to cease violation of the covenant, or plaintiff may be held entitled only to damages for breach of the covenant. Among the grounds for denial of injunctive relief is a showing of plaintiff's guilt of laches in failing to act more promptly to enforce his rights, and in the establishment of such guilt the burden of proof is on the defendant.

"Exactly what conduct on the part of plaintiff does or does not amount to laches is a question to be answered in the light of facts presented by each individual case. Mere delay in bringing suit does not, in itself, constitute laches: it has been held that laches was not established where the period between the violation of the building covenant and the action to enforce it was as great as twelve years . . ."

In this case we think the trial court wisely refrained from punishing appellant for contempt and correctly required her to abide by the imposed restrictions in conducting the rest home, and its decree is therefore affirmed.

Affirmed.